UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEREMIAH F. HERBERT,

                          Plaintiff,

            -against-

B. JONES, et al.,

                          Defendants.

**OPINION & ORDER**

25-CV-04578 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Jeremiah Folsom Herbert ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against current and former New York State Department of Corrections and Community Supervision ("DOCCS") employees, Correction Officer Ashton Jones ("Jones"),[1] Correction Officer Sakaya Cameron ("Cameron"), Sergeant Romeo Riley ("Riley"), Sergeant Alicia Johnson ("Johnson"), and Sergeant Jayson George ("George," and collectively, "Defendants") for violating his constitutional rights while he was incarcerated at Sing Sing Correctional Facility ("Sing Sing") in Ossining, New York. (Doc. 1, "Compl."). Specifically, Plaintiff presses claims for (i) failure to protect, (ii) unconstitutional conditions of confinement, (iii) excessive force, and (iv) deliberate indifference to medical needs. (*See generally id.*).

Defendants filed their motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) on November 5, 2025. (Doc. 30). Defendants filed their memorandum of law in support of their motion to dismiss and supporting declaration on that same day. (Doc. 31, "Def.

---

[1] The Court, by Order dated October 28, 2025, deemed the Complaint amended to substitute originally named defendant "B. Jones" with Correction Officer Ashton Jones. (Doc. 26).

Br."; Doc. 32, "Cahn Decl."). Plaintiff filed opposition on December 15, 2025 (Doc. 39, "Pl. Br.")[2] and Defendants filed reply on January 30, 2026 (Doc. 47, "Reply").

For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion to dismiss and draws them from the Complaint. The Court draws all reasonable inferences in Plaintiff's favor. *See Lesser v. TD Bank, N.A.*, 463 F. Supp. 3d 438, 445 (S.D.N.Y. 2020).

Plaintiff alleges that on or about January 2024, he was transferred from Attica Correctional Facility ("Attica") to "A-Block" at Sing Sing so that he would be nearer to the courthouse for a trial he was participating in. (Compl. at 4).[3] On January 29, 2024, while awaiting transfer back to Attica, Plaintiff alleges he was "cut with [a] Razor Blade and ass[a]ulted by well known gang members," while "waiting to use" the "Yard A-Block phone" (the "January 29, 2024 Incident"). (*Id.* at 4-5). As a result, Plaintiff alleges he suffered a broken nose, a cut to the right side of his face, eye disfigurement, and mental and emotional pain and suffering. (*Id.* at 5). During the January 29, 2024 Incident, Plaintiff claims Defendants failed to protect him, despite being "made aware of risk" and despite Plaintiff's "report" to Defendants George and Riley of "threats of violence" and "fears of personal health and safety" prior to the alleged assault. (*Id.* at 5, 7).

Plaintiff further claims that while housed at A-Block at Sing Sing in January 2024, he was subjected to inhumane conditions of confinement including a "cold freezing cell, with mildew, fungus, black mold on cell walls and cell floors," and was "forced to walk 2-miles to [a]

---

[2] On January 29, 2026, Plaintiff filed a document entitled "Plaintiff's Statement of Disputed [sic] Factual Issues." (Doc. 46). The Court, despite Plaintiff's failure to seek leave to supplement his opposition and the untimely nature of such filing, construes Doc. 46 as supplemental to Plaintiff's opposition brief, and considers it herein to the extent relevant.

[3] Citations to specific pages of filings on the docket correspond to the pagination generated by ECF.

2

Bath[h]ouse to shower with around 75 men with rusty showers." (*Id.* at 8) (citation modified). As a result of these conditions, Plaintiff claims he filed a grievance on February 3, 2024, stating that he had trouble breathing, sustained "swelling infections," and was denied "drinkable water." (*Id.*). Plaintiff also claims he suffered physical injuries stemming from his conditions of confinement, including, but not limited to, loss of sleep, anxiety, head trauma, and back, shoulder and stomach pains. (*Id.* at 9).

Plaintiff also claims that on February 3, 2024, Defendants Cameron and George "kick[ed] plaintiff in the back of [the] Head" and then Defendants Cameron, Riley, George, and Johnson, while inside a "medical unit," "struck plaintiff with [a] Baton and Assaulted Plaintiff with excessive use of force." (*Id.* at 9). On February 8, 2024, each Defendant also allegedly "punch[ed] plaintiff in the face repeatedly" and "savagely and mer[c]ilessly beat plaintiff." (*Id.* at 10-12). After these assaults, Plaintiff alleges that he "made repeated requests to Sgt. George and Sgt. Ri[]ley . . . to have plaintiff seen by [a] Doctor," but no efforts were made to achieve this request. (*Id.* at 11).

Plaintiff claims that he "did exhaust[] the grievance process" and "fully completed the three step administrative appeal process." (*Id.* at 12).

This litigation followed.

## STANDARD OF REVIEW

### I.   Federal Rule of Civil Procedure 12(b)(6)

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).[4] A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cnty.*, No. 12-CV-06718, 2013 WL 3357171, at \*2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

II.    Documents Considered

Plaintiff submitted a "Memorandum" from "Rachel Seguin, Director, Incarcerated Grievance Program" detailing receipt of Plaintiff's appeal of Grievance No. A-0469-24, as "Exhibit A" to his Complaint. (Compl. at 15, the "Memorandum"). Plaintiff also attaches associated grievance documents as attachments to his opposition. (*See* Pl. Br. at 14-19). Given the liberality afforded *pro se* litigants, "in deciding a motion to dismiss a *pro se* complaint, it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint, including documents that a *pro se* litigant attaches to his opposition papers." *Davis v. Cnty. of Suffolk*, No. 18-CV-00303, 2020 WL 7699919, at \*4 (E.D.N.Y. Oct. 30, 2020), *adopted by* 2020 WL 7041082 (E.D.N.Y. Dec. 1, 2020). "[T]he Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated

in it by reference, [as well as] documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken[.]" *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) (explaining that a court may consider "statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit"). The documents that Plaintiff attached to his Complaint and opposition are consistent with the allegations pled in the Complaint, as Plaintiff references the grievance procedure and his belief that he properly completed administrative exhaustion. (Compl. at 5, 8, 10, 12). Accordingly, the Court may, and does, consider these attachments in deciding this motion.

Additionally, Defendants provide grievance documentation as attachments to the Cahn Declaration, consisting of a copy of "Plaintiff's CORC History" (Doc. 32-1, Ex. A) and a copy of "Plaintiff's Grievance History from Attica Correctional Facility" (Doc. 32-2, Ex. B, and together with Ex. A, "Inmate Grievance History"). The Court also considers these documents in deciding this motion, as Plaintiff "relies heavily on the document[s'] terms and effect in pleading his claims and there is no serious dispute as to the document[s'] authenticity." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 107 (2d Cir. 2021).[5] Further, the Court may take judicial notice of these documents as they constitute a "record[] of administrative bodies charged with administering prison grievance programs." *Murphy v. Rodriguez*, No. 23-CV-06998, 2024 WL 4290723, at *2

---

[5] The Court notes, as discussed *infra*, that the documents Plaintiff attaches to his opposition are copies of the Inmate Grievance History, with his handwriting circling two entries, and are otherwise identical to the Inmate Grievance History submitted by Defendants. (*Compare* Inmate Grievance History *with* Pl. Br. at 14-19).

(S.D.N.Y. Sept. 25, 2024) (quoting *Akinlawon v. Polonco*, No. 21-CV-02621, 2023 WL 6216724, at *2 (S.D.N.Y. Sept. 25, 2023)).

## ANALYSIS

I.    Administrative Exhaustion

As an initial matter, Defendants argue that Plaintiff's Eighth Amendment unconstitutional conditions of confinement, excessive force, and deliberate indifference to medical needs claims must be dismissed for failure to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). (Def. Br. at 4-9).[6] The Court agrees.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Hernández v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)); and it is "'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies," *Ross v. Blake*, 578 U.S. 632, 638 (2016). "Moreover, the PLRA 'requires proper exhaustion, which means using all steps that the prison grievance system holds out.'" *Ayala-Rosario v. Westchester Cnty.*, No. 19-CV-03052, 2020 WL 3618190, at *4 (S.D.N.Y. July 2, 2020) (quoting *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)). This "means that 'prisoners must complete the administrative review process in accordance

---

[6] Defendants do not move to dismiss Plaintiff's failure to protect claim for failure to exhaust, conceding that Plaintiff "properly exhausted" this claim. (Def. Br. at 7). Accordingly, the Court does not analyze the sufficiency of Plaintiff's failure to protect claim on exhaustion grounds, restricting its analysis to the remaining three Eighth Amendment claims.

with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 1082590, at *6 (S.D.N.Y. Mar. 6, 2020) (quoting *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012)).

Generally, as an inmate in DOCCS custody, Plaintiff was required to follow a three-step process to exhaust the grievance process completely. *See Amador v. Andrews*, 655 F.3d 89, 96-97 (2d Cir. 2011) (outlining DOCCS' three-step grievance process). First, a grievance must be submitted to the Inmate Grievance Resolution Committee ("IGRC"), a facility-level body consisting of inmates and facility staff members. N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.4, 701.5(a)-(b). Second, should the inmate be dissatisfied with the conclusion reached by the IGRC, he may appeal that decision to the superintendent of the facility within seven calendar days of receiving the IGRC's determination. *Id.* § 701.5(c)(1). Finally, if the superintendent's conclusions are unfavorable, the inmate may appeal that decision to the Central Office Review Committee ("CORC") within seven calendar days of receiving the superintendent's determination. *Id.* § 701.5(d)(1)(i). CORC then has 30 days by which to provide a response to the appeal. *Id.* § 701.5(d)(3)(ii). Administrative exhaustion requirements are therefore satisfied either upon CORC's response to the appeal within the 30-day timeline by which it must respond, or once the 30-day window expires with no response. *See Hayes v. Dahlke*, 976 F.3d 259, 270-71 (2d Cir. 2020). Both the correctional facility's Superintendent and CORC are required to "date stamp all" grievances or appeals forwarded to them for review, N.Y. Comp. Codes R. & Regs. tit. 7 §§ 701.5(c)(3), 701.5(d)(3)(i), and maintain files "for the current calendar year plus the previous four calendar years," *id.* § 701.6(k)(3).

Where a defendant moves to dismiss based upon a yet to be pled affirmative defense of exhaustion under the Prison Litigation Reform Act ("PLRA"), the Court may consider the

8

affirmative defense if "plaintiff's non-exhaustion is clear from the face of the complaint." *Hickman v. City of New York*, No. 20-CV-04699, 2021 WL 3604786, at \*2 (S.D.N.Y. Aug. 12, 2021) (collecting cases).

Plaintiff affirmatively pleads in the Complaint the following: on "February 3, 2024 Plaintiff wrote grievances about inadequate living conditions, Trouble with breathing, swelling infectious because of Black mold and rusty water;" "[o]n February 4, 2024, Plaintiff did file grievance about use of force by [] defendants . . . [and] did file an administrative appeal with regards to excess use of force inside Sing Sing Medical Clinic;" and that generally, "Plaintiff did exhaust[] the grievance process" and "fully completed the three step administrative appeal process." (*See* Compl. at 8, 10-11). Plaintiff included the Memorandum as an attachment to the Complaint indicating that "grievance A-0469-24 entitled Failure to Protect at Sing Sing CF was rec'd by CORC on 8/27/2024." (*Id.* at 15). Additionally, in Plaintiff's opposition (Pl. Br. at 8, 12), Plaintiff further alleges that he properly followed the administrative exhaustion procedures under "42 usc 1997 and Docs Directive 4040 and under the prison litigation reform act."

Despite Plaintiff's assertions that he properly filed grievances and administratively appealed all of his claims, it is plain to the Court that the only claim that is properly exhausted is Plaintiff's failure to protect claim stemming from the January 29, 2024 Incident, which Defendants concede. (Def. Br. at 7-8; Reply at 2 (referring to the "failure to protect grievance at Sing Sing which Defendants agree Plaintiff exhausted")). The Court, however, finds that Plaintiff has failed to exhaust any of the three remaining Eighth Amendment claims (unconstitutional conditions of confinement, excessive force, and deliberate indifference to medical needs).

The Memorandum Plaintiff attached to the Complaint refers only to the grievance identified as A-0469-24, which upon review of the Plaintiff's Inmate Grievance History, is titled

"Failure to Protect at Sing Sing CF," and was dated February 15, 2024. (Cahn Decl., Ex. A at 1, Ex. B at 2). Upon a thorough review of the Inmate Grievance History (*id.*), which reflects all grievances filed by Plaintiff, there are no additional grievances within the relevant time period (in or about February 2024) that could be construed to be related to any of Plaintiff's unconstitutional conditions of confinement, excessive force, and deliberate indifference to medical needs, which grievances Plaintiff claims he filed on February 3 and 4, 2024 (Compl. at 8, 10, 12). Plaintiff, appearing to concede this, also attaches portions of the Inmate Grievance History to his opposition, with what appear to be edits, constituting hand-written circles around three rows: two entitled "A-0469-24;" and one entitled "A-1250-24." (Pl. Br. at 14, 18). Reviewing Plaintiff's edits liberally, the Court construes these handwritten circles as argument that all of Plaintiff's claims may be exhausted through the filing of "A-0469-24" and "A-1250-24."

"A-0469-24" is, as discussed above, the grievance associated with the failure to protect claim and not his other three claims. The other grievance row Plaintiff circles, "A-1250-24," is entitled "Threatened by Staff/Racist Remarks/Dirty Cell" and is dated May 8, 2024. (Pl. Br. at 14). Even assuming that this grievance contained allegations sufficient to put prison officials on notice of the three remaining Eighth Amendment claims, the last dates associated with Plaintiff's allegations are February 8, 2024 (alleging that Defendants "savagely and mercilessly [sic] beat plaintiff) and February 9, 2024 (alleging that Defendants George and Cameron "did request sick call no[] remedy was made available"). (Compl. at 11). Thus, construing Plaintiff's edits liberally, the timing of this grievance, a full three months after the furthest-in-time allegations, would be insufficient to exhaust administrative remedies under the PLRA as the filing would have been more than 21 days after such allegations. *See Bonie v. Annucci*, No. 20-CV-00640, 2023 WL

10

2711349, at *10 (S.D.N.Y. March 30, 2023) ("An untimely filing . . . fails to exhaust administrative remedies under the PLRA.").[7]

In light of the foregoing, Defendants' motion to dismiss on the basis that Plaintiff failed to exhaust his administrative remedies is granted as to Plaintiff's unconstitutional conditions of confinement, excessive force, and deliberate indifference to medical needs claims.[8]

## II.   Failure to State a Claim – Eighth Amendment Failure to Protect

Defendants also move on the additional ground that Plaintiff has failed to state a claim as to his federal claims. Construing the Complaint liberally, and in light of the exhaustion analysis, *supra*, what remains is a singular Eighth Amendment failure to protect claim under 42 U.S.C. § 1983.[9] Section 1983 provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the

---

[7] Plaintiff also states, albeit in a conclusory fashion, that he "can show at trial how from January 12, 2024 until March 1, 2025 each defendant imposed plaintiff to deplorable living conditions at Sing-Sing C.F." (Compl. at 9). However, the Court notes that Plaintiff, throughout the Complaint, switches between 2025 and 2024 when referring to dates during the relevant time period. (*See, e.g.*, *id.* at 5, 7). In light of this, and considering that the trial for which Plaintiff was in transit ended on January 23, 2024 (*see id.* at 4; *see also Herbert v. Ginty*, No. 20-CV-06348, Minute Entry dated January 23, 2024 (detailing that the jury trial completed on "1/23/2024")), the Court construes Plaintiff's allegations to be from January 12, 2024 through March 1, 2024. Accordingly, the timing of the A-1250-24 Grievance, which is notably contained within the Attica Grievance History (with no reference to Sing Sing), would also have been untimely. *Bonie*, 2023 WL 2711349, at *10.

[8] In light of the Court's determination on exhaustion herein, the Court need not, and does not, consider Moving Defendants' substantive arguments for failure to state a claim concerning Plaintiff's claims for i) unconstitutional conditions of confinement or ii) deliberate indifference to medical needs (Defendants do not move on the merits of Plaintiff's excessive force claim). (*See* Def. Br. at 11-14).

[9] Plaintiff's opposition also references, for the first time, purported claims for "retaliation" and "sexual assault." (Pl. Br. at 4-6, 9; Doc. 46 at 1-3). Even liberally construed, there are no factual allegations in the Complaint that could support either of these "entirely new" claims. *See Ebalu v. New York City Police Department*, No. 21-CV-06476, 2022 WL 4485920, at *3 (S.D.N.Y. June 21, 2022) (noting that while "[a] *pro se* plaintiff may not raise 'entirely new' causes of action for the first time in his opposition papers" a court may "consider new claims appearing for the first time in briefing if 'the claims could have been asserted based on the facts alleged in the complaint'"). Accordingly, the Court declines to consider such claims as improperly pled in opposition.

11

party injured . . . ."42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (alteration in original)).

The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of inmates in their custody." *Rennalls v. Alfredo*, No. 12-CV-05300, 2015 WL 5730332, at *3 (S.D.N.Y. Sept. 30, 2015) (quoting *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)). However, while prison officials have a duty to protect prisoners, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Fair v. Weiburg*, No. 02-CV-09218, 2006 WL 2801999, at *4 (S.D.N.Y. Sept. 28, 2006) (quoting *Farmer*, 511 U.S. at 834).

To state a failure to protect claim, a plaintiff must plead facts sufficient to establish both an objective and subjective prong. *See Camacho v. DuBois*, No. 21-CV-06180, 2022 WL 17807433, at *5 (S.D.N.Y. Dec. 19, 2022). The objective prong in a failure to protect case requires that "[a] plaintiff show a substantial risk of harm from either a specific assailant or a more general risk of harm due to the conditions at the time of the attack, such as where a substantial risk of inmate attacks was longstanding, pervasive, [or] well-documented." *Dietrich v. Cnty. of Orange*, No. 19-CV-10485, 2020 WL 5209816, at *3 (S.D.N.Y. Sept. 1, 2020) (alterations in original). As for the subjective prong, "a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Rennalls*, 2015 WL 5730332, at *3; *see also Bacon v. Evans*, No. 20-CV-06337, 2021 WL 5643038, at *4 (S.D.N.Y. Dec. 1, 2021) (explaining that a

12

plaintiff must sufficiently allege that "the defendant acted with deliberate indifference" to state a failure to protect claim).

Defendants argue that the vague "report" Plaintiff is alleged to have provided to Defendants of his risk of assault and fear for his safety was insufficient to put them on notice of a risk to Plaintiff; and therefore fails the subjective element. (Def. Br. at 9-11). The Court agrees.

Plaintiff states that prior to the January 29, 2024 Incident by alleged "well known gang members," Defendants "were made aware of risk and could have prevented attack upon plaintiff inside A-Block yard." (Compl. at 5, 7). Specifically, Plaintiff alleges that on January 25 and 27, 2024, prior to the January 29, 2024 assault, he "report[ed] to Sgt. George and Sgt. Riley about threats of violence," "wrote to [them] about fears of personal health and safety," and avers generally that "each defendant . . . has knowledge First hand of the risk plaintiff faced going to A-Block yard on January 29, 2024." (*Id.* at 7). Such conclusory and non-specific allegations are insufficient to show that any of the Defendants "kn[e]w of, and disregard[ed], an excessive risk to inmate health or safety." *See Dietrich*, 2020 WL 5209816, at *4 (holding that allegations that a particular inmate was "dangerous," "violent," and "instigated fights with other inmates," and that individual defendants "knew that [this inmate] 'had a predilection for violence,'" were insufficient to satisfy the subjective prong as "Plaintiff provide[d] no specifics that might provide a factual basis for those bare allegations"); *see also Ruggiero v. Jones*, No. 23-CV-07157, 2024 WL 5202573, at *6 (S.D.N.Y. Dec. 23, 2024).

Plaintiff's allegations, without more, do not provide sufficient detail as to the nature of Plaintiff's relationship with the alleged "well known gang members," what the "threats of violence" were that Plaintiff allegedly "report[ed]" to Defendants George and Riley, or whether Plaintiff requested to be transferred to a different cell block *prior* to the events of January 29, 2024,

13

to plausibly state a claim for failure to protect. *Cf. Scott v. Westchester County*, 434 F. Supp. 3d 188, 199 (S.D.N.Y. 2020) (holding that plaintiff sufficiently pled a failure to protect claim where prior to being attacked by members of a specific gang, the "Goonies," plaintiff had previously informed a sergeant that "members of the Goonies were trying to kill him," and that plaintiff "was not safe in general population due to the presence of numerous members of the Goonies."); *Walker v. Shaw*, No. 08-CV-10043, 2010 WL 2541711, at *9 (S.D.N.Y. June 23, 2010) (finding that a "trier of fact could conclude that the prison officials failed to take reasonable measures to abate the harm" faced by the plaintiff where he had "requested a transfer from his [rival gang's] cell block").

Separately, Plaintiff's allegations amount to a *surprise* attack. *See Carrasco v. Annucci*, No. 17-CV-09643, 2020 WL 5038561, at *3 (S.D.N.Y. Aug. 26, 2020). Although the Court sympathizes with Plaintiff's situation, "unexpected incidents are insufficient to propagate a deliberate indifference claim." *Gilmore v. Rivera*, No. 13-CV-06955, 2014 WL 1998227, at *4 (S.D.N.Y. May 14, 2014); *see also Rivera v. Royce*, No. 19-CV-10425, 2021 WL 2413396, at *8 (S.D.N.Y. June 11, 2021) ("It is well-established that prison officials cannot be deliberately indifferent to a surprise attack.").

Accordingly, Plaintiff has failed to plausibly plead a failure to protect claim.

III.    Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). Liberal application of Rule 15(a) is warranted with respect to *pro se* litigants who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (quoting *Satchell*

14

*v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984)). District courts "should not dismiss [pro se complaints] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

The Court, applying these principles, grants Plaintiff leave to file an amended complaint within thirty days of the date of this Opinion and Order. *See Attestor Value Master Fund v. Republic of Arg.*, 940 F.3d 825, 833 (2d Cir. 2019). Plaintiff's leave to amend, however, is granted only as to his Eighth Amendment failure to protect claim, as amendment to his remaining claims would be futile considering the Court's holding on Plaintiff's failure to exhaust. *See Islam v. Steiner*, No. 24-CV-10064, 2026 WL 589600, at *10 (S.D.N.Y. March 2, 2026) (noting that "a court should not grant leave to replead where such effort would be futile due to the *pro se* plaintiff's uncurable failure to exhaust his administrative remedies" (quoting *Richardson v. City of New York*, No. 21-CV-05080, 2023 WL 1777323, at *4 (S.D.N.Y. Feb. 6, 2023))).

Plaintiff, in this amended complaint, should provide more facts about his failure to protect claim. Specifically, Plaintiff should include "short and plain statement[s] of the relevant facts" explaining what specifically, if anything, he told Defendants of his "risk" in A-Block Yard, what "threats of violence" existed against him, and whether and to what extent he had previously interacted with the alleged "known gang members." *See Rivers v. Department of Corrections NYC*, No. 24-CV-00120, 2024 WL 1621417, at *3 (S.D.N.Y. Apr. 15, 2024). Because Plaintiff's new complaint "will completely replace, not supplement," his current complaint, "any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint." *Id.*

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

15

Plaintiff may file an Amended Complaint within thirty days from the date of this Opinion and Order to address only the substantive pleading deficiencies identified herein and for no other purpose. Specifically, Plaintiff may replead only his Eighth Amendment failure to protect claim stemming from the January 29, 2024 Incident. Failure to file an Amended Complaint within thirty days will result in dismissal of this action without further notice.

The Clerk of Court is respectfully requested to terminate the motion sequence pending at Doc. 30 and mail a copy of this Opinion and Order to Plaintiff at the address listed on the docket.

**SO ORDERED.**

Dated:   White Plains, New York
         May 20, 2026

PHILIP M. HALPERN
United States District Judge

16